<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JACK HORN and JEAN HORN, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civil Action No. 08-5635 (GEB)<br>) |
| WAL-MART STORES, INC.; WAL-MART STORES EAST, INC.; and WAL-MART STORES EAST, LP, | )<br>)<br>) **MEMORANDUM OPINION**<br>) |
| Defendants. | )<br>)<br>) |

<u>**BROWN, Chief Judge**</u>

This matter comes before the Court upon Defendants' Wal-Mart Stores, Inc., Wal-Mart Stores East, Inc., and Wal-Mart Stores East, LP (collectively "Wal-Mart" or "Defendants") Motion for Partial Summary Judgment. (Doc. No. 10.) The Plaintiffs oppose this motion. (Doc. No. 11.) The Court having considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below Defendants' Motion for Partial Summary Judgment is denied.

**I.    BACKGROUND**

On January 10, 2008, 81 year old Plaintiff Jack Horn was prescribed Coumadin, a blood thinner, by his cardiologist in a dosage of 10mg on the first day and then 5mg per day thereafter. (Pls.' Opp'n. Br. at 4; Doc. No. 10-2.) The prescribing cardiologist's office called in the

1

prescription via telephone to the Wal-Mart Pharmacy located at 1236 Route 22, Phillipsburg, New Jersey. (*Id.*) The oral prescription order was taken by pharmacist Sherri DeFranco, who correctly transcribed the prescription and then left for the day, leaving another pharmacist, Arnold Beilin, to fill the prescription. (*Id.*)

The prescription was filled with the correct medication, Warfarin (a generic form of Coumadin), but the instructions set forth on the bottle label instructed Plaintiff to "TAKE TWO [5MG] TABLETS BY MOUTH EVERY DAY THEN TAKE 1 TABLET IN THE EVENING," a dosage that was three times the dosage prescribed. (*Id.*) Plaintiff alleges that he ingested the medication in accordance with the instructions set forth on the label of the bottle on or about January 10, 11, 12, and 13, 2008. (Compl. at ¶ 29.) Plaintiff alleges that this caused him to suffer a stroke that has resulted in permanent injuries. (*Id.* at ¶ 30.)

In connection with this lawsuit, Mr. Beilin was deposed and testified that he had an obligation to learn information about the medications that he was dispensing, such as the dosage. He stated that he had to know the recommended dosages "so that we can be aware of excess dosages that could cause harm." (Pls.' Supp. 56.1 Stmt. ¶ 8; Doc. No. 12-2.) He also testified that he knew that Coumadin was a "High Therapeutic Index" medication, meaning a medication where even a small dosage error can cause serious health consequences to a patient. He further admitted that he did not know the safe loading dose, and he was aware that this lack of knowledge placed a patient at serious risk. (*Id.*)

At the time of the incident, Defendants' computer system contained a program called the "Gold Standard" which contained information about all prescription medications, including the medications' recommended dosages, potential allergic reactions and medication

2

contraindications. (Pls.' Supp. 56.1 Stmt. ¶ 10; Doc. No. 12-2.) It also contained information about the patients, including the patients' disease states, other medications that had been and were being taken by the patient, and the patients' drug allergies. (*Id.*) If the prescribed dosage exceeded the recommended daily dosage, then the computer would display a yellow flag and would instruct the pharmacist to "verify the dosage." (*Id.* at ¶ 11.) The computer in this case displayed a yellow warning to Mr. Beilin, and he admitted receiving the warning and that he was required to contact the prescribing physician to verify the dosage. (*Id.* at ¶ 12.) Instead of contacting the physician, he overrode the warning and dispensed the medication. (*Id.*)

The Complaint was filed on November 17, 2008, alleging in Count I a breach of common law negligence, carelessness, gross negligence, and recklessness of each Defendant, acting individually and by and through their agents and employees. (Compl. ¶ 33.) Count I further alleges violation of N.J.S.A. § 45:14-67, a New Jersey law requiring pharmacists to counsel customers before a medication is dispensed to them. (Compl. ¶ 33(y).) Count II of the Complaint alleges that Plaintiff Jean Horn, wife of Jack Horn, has been deprived of the society, comfort, assistance, and consortium of her husband. (Compl. ¶ 41). Each Plaintiff seeks compensatory damages of $150,000 plus interest and costs of suit, as well as punitive damages. (Compl. ¶¶ 38-41.) Defendant Wal-Mart filed the instant Motion for Partial Summary Judgment on October 23, 2009. The motion was fully briefed on November 17, 2009.

## II.     DISCUSSION

Wal-Mart moves for Partial Summary Judgment, arguing that as a matter of law Plaintiffs are not entitled to recover punitive damages against Wal-Mart. (Def.'s Br. at 5; Doc. No. 10-2.)

### A.     Standard of Review

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prods. Co. Inc.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987).

**B.     Application**

Wal-Mart moves for Partial Summary Judgment, arguing that as a matter of law Plaintiffs are not entitled to recover punitive damages against Wal-Mart. (Def.'s Br. at 5; Doc. No. 10-2.)

*1.     Rule of Law*

Under New Jersey law, punitive damages awards are sharply circumscribed. N.J.S.A. § 2A: 15-5.12 (2009), which authorizes the imposition of punitive damages, provides that:

> Punitive damages may be awarded to the plaintiff if the plaintiff proves by clear and convincing evidence, that the harm suffered was the result of defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. This burden of proof may not be satisfied by proof of any degree of negligence including gross negligence.

By statute, punitive damages are available to plaintiffs in two situations: (1) where the plaintiff can establish harm that resulted from "actual malice" or (2) a "wanton and willful disregard" on the part of the defendant. "Wanton and willful disregard" is defined in the statute as "a deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission." N.J.S.A. § 2A:15-5.10 (2009). The Plaintiffs are not contending that Defendants acted maliciously.

As set forth in the punitive damage statute, a plaintiff must prove his entitlement to punitive damages by clear and convincing evidence, which is a more stringent standard than a preponderance of the evidence. Clear and convincing evidence produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence that is so clear, direct and weighty and convincing that it enables the fact-finder to come to a conclusion without hesitancy of the truth of the precise facts in issue. *See United States v. Askari*, 222 Fed. Appx. 115, 119 (3d Cir. 2007) (quoting *In re Jobes*, 108 N.J. 394, 408 (1987)).

    2.    *Summary of the Parties' Arguments*

Defendants argue that "[t]here are no facts to show that Mr. Beilin committed a deliberate act with knowledge that the act carried a high probability of harm toward the Plaintiff," and that "Plaintiff has not established any facts suggesting that Mr. Beilin might have deliberately misread or transposed Ms. DeFranco's written prescription order." (Defs.' Br. at 7; Doc. No. 10-2.) Defendants argue that an ordinary professional liability claim cannot give rise to punitive damages against Mr. Beilin's employer. (*Id.* at 8.) Defendants further state that nothing in Mr. Beilin's exemplary work history suggested that he would make an "inadvertent mistake," and

5

that Plaintiffs' Expert Report fails to support its conclusion of "outrageous indifference" with any scientific or academic studies." (*Id.* at 10, 13.) Finally, Defendants note that there has never been a state or federal case in New Jersey supporting a punitive damages recovery under a pharmacy malpractice theory, and further note that they cannot find a case in which punitive damages were even alleged. (*Id.* at 15.)

Plaintiffs counter by arguing that they have alleged that Mr. Beilin "knew that Coumadin was a High Therapeutic Index medication, meaning that even a small error in dosage may cause serious health consequences to the patient." (Pls.' Opp'n Br. at 15; Doc. No. 12-3.) Plaintiffs argue that Mr. Beilin, through his ignorance of the proper dosage, override of the computer's warning that the prescribed dosage was too high, refusal to contact the prescribing physician to verify the dosage, and lack of an offer to counsel the Plaintiff regarding the prescription, placed Plaintiff at serious risk of harm. (*Id.* at 16-17.) Plaintiffs argue that "[w]hen a person fails to learn information which the person knows he is required to know, and where a person knows that his failure to learn this information places another person at risk of serious harm, yet fails to learn the information anyway, that conduct itself constitutes a deliberate act – willful ignorance." (*Id.* at 16.)

Plaintiff also contends that Wal-Mart acted wantonly by and through its upper management, by designing its computer warning program to give drug allergies the highest warning level (a "red flag") while only giving drug dosage warnings a lower warning level (a "yellow flag"). (*Id.* at 25.) Plaintiffs finally argue that Defendants' conduct rose to the level of wantonness or recklessness because they employed incompetent pharmacists that did not know routine dosages and failed to comply with a statute requiring pharmacists to counsel patients.

(*Id.* at 25-28.)

After these main arguments, the Plaintiffs launch into a discussion of various non-precedential cases from such venues as Alabama, Georgia, the Eastern District of Tennessee, the Western District of Kentucky, and the Eastern District of Pennsylvania.  In their amended reply brief, Defendants note that New Jersey law requires both willful *and* wanton conduct, unlike the other state statutes mentioned in the cases cited by Plaintiff.  (Defs.' Am. Reply Br. at 2; Doc. No. 20) (emphasis in original.)

      3.    *Analysis*

To collect punitive damages, New Jersey requires a plaintiff to prove by clear and convincing evidence that the Defendant acted with actual malice or willful and wanton disregard for the safety of the Plaintiffs.  The Defendants argue that a dearth of case law on the subject means that partial summary judgment is appropriate.  However, the Court concludes that a reasonable juror could find that the Defendant acted with willful and wanton disregard for the safety of the Plaintiffs.  Plaintiffs have alleged enough facts, when viewed in the light most favorable to them, to support a conclusion that Mr. Beilin's conduct rose to the level required by New Jersey law.

In a medical malpractice context, New Jersey courts have supported punitive damage awards in a battery claim for failure to obtain informed consent (*Tonelli v. Khanna*, 238 N.J. Super. 121 (App. Div. 1990)), if the physician abandoned a patient during an operation (*Medvecz v. Jae Hong Choi*, 569 F.2d 1221 (3d Cir. 1977)), or if the intentional tort of "ghost surgery," surgery performed by a different physician without the patient's consent, occurrs (*Monturi v. Englewood Hospital*, 246 N.J. Super. 547 (App. Div. 1991)).  These cases show that there is no

blanket exemption in New Jersey law against punitive damages in the professional malpractice context.

Mere negligence or even gross negligence cannot support an award of punitive damages. However, Mr. Beilin testified at his deposition that he knew of the risks associated with overdosages of Coumadin, and further that he overrode the computer warning that explicitly told him to confirm the dosage with the prescribing physician. This Court cannot, as a matter of law, state that these actions do not rise to the level of "willfull and wanton conduct" as defined in the New Jersey punitive damages statute.

### III.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment (Doc. No. 10) is denied. An appropriate form order is filed herewith.


Dated: December 4th, 2009

                                           s/ Garrett E. Brown, Jr.
                                          GARRETT E. BROWN, JR., U.S.D.J.